335 So.2d 887 (1976)
Gary McCLENDON
v.
STATE of Mississippi.
No. 49011.
Supreme Court of Mississippi.
July 27, 1976.
Don H. Evans, Jackson, for appellant.
A.F. Summer, Atty. Gen., by Catherine Walker, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SMITH and BROOM, JJ.
BROOM, Justice, for the Court:
Burglary was the offense for which appellant, Gary McClendon, was tried and convicted in the Circuit Court of the First Judicial District of Hinds County, Mississippi. He appeals from a judgment requiring him to serve seven years imprisonment. We affirm.
Howard Brothers Pharmacy, located on Interstate 55 North in Jackson, Mississippi, was burglarized shortly before midnight on October 1, 1974. C.B. Floyd, a Jackson city patrolman, went to investigate after a burglary alarm went off, and upon arrival saw one subject (Jack Robinson) sitting in a car. He saw another subject, later identified as appellant, run from the building to the car *888 and place something in the car. Robinson, the driver of the car, apparently observed Officer Floyd and hurriedly drove away, leaving appellant at the scene. Within a short time Floyd pursued and arrested Robinson after which he promptly returned to the area behind the pharmacy building where appellant (attempting to climb a fence) was arrested. Floyd heard appellant say: "Don't shoot. I did it." Appellant wore no shoes and mud was on his arms. A pair of shoes was found in the parking lot, and also found were a crowbar and certain pharmaceutical supplies.
While several assignments of error were made and argued, only one merits discussion. The record shows that without objection trial began and ended on November 20, 1974. After two law officers testified for the state, appellant, by ore tenus motion, requested a recess
... until 9:00 o'clock A.M., November 21, 1974, or until such time as Jack Robinson could be brought back to Hinds County to testify in this trial, ...
The ore tenus motion was made (dictated into the record) during the trial and was made without any subpoena or any process whatever having been issued or requested for the witness Robinson (driver of the car into which Officer Floyd saw appellant place something). Appellant's counsel said he discovered during the noon recess that Robinson, who had been convicted for burglary regarding the same incident, had been taken to the penitentiary at Parchman. Robinson and appellant were both represented by the same counsel, who attributed his failure to subpoena the witness to "... the large number of cases which he had scheduled for trial." The motion under discussion did not clearly specify how long a recess or continuance was desired. It did not say that he desired a recess for merely a few hours or until another day certain, but vaguely specified "until such time as Jack Robinson could be brought back" to testify.
In our jurisprudence the trial court has broad discretion in the granting or refusing of a continuance or delay. In such cases, this Court will not disturb the holding of the trial court unless we can say from the facts shown in the trial that the trial court abused its discretion or that injustice has been done. Jackson v. State, 254 So.2d 876 (Miss. 1971). Here there was no abuse of discretion on the part of the trial judge who denied appellant's application for time, whether called a recess or delay or continuance. It cannot be said that an injustice has been done.
A similar situation was presented to this Court in Douglas v. State, 212 Miss. 176, 54 So.2d 254 (1951). During Douglas' trial he had failed to subpoena certain witnesses whose presence he desired and asked for by motion ore tenus during the course of the trial. Counsel for Douglas orally stated into the record: "The defendant requests of the court a sufficient time within which to procure the attendance of witnesses, as aforesaid." The request for time to procure the presence of witnesses was overruled and on appeal this Court affirmed the conviction, stating: "There was no formal motion for a continuance or postponement, as required by Section 1520, Code of 1942." That section appears in the 1972 Code as § 99-15-29. As noted in Douglas, when the appellant here made his decision to ask for time to have Robinson present and testify, he should have filed a formal motion under what is now Code § 99-15-29, which statute requires an affidavit setting forth, among other things, that he has "used due diligence to procure ... the presence of the absent witness ... stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done." Appellant's ore tenus motion in the present case is in all practical aspects identical to that made in Douglas. It does not conform to the statute in that it is unsworn, has no affidavit included or attached, and fails to say that due diligence had been used to procure witness Robinson's presence, and fails to state that the continuance was not sought for delay only, but that justice may be done.
*889 As noted in Black's Law Dictionary 1250 (4th ed. 1951), "pleading was anciently carried on ore tenus, at the bar of the court." Exigencies which arise during the course of present day court trials are often rightly met with such pleadings, but the substance and content of such pleadings required by a statute cannot be ignored. Here, had the ore tenus motion (not conforming with the statutory requirements) been upheld, appellant would have been allowed to accomplish with such a deficient informal pleading what this Court has repeatedly held could not be done except by a written sworn motion.
A similar situation was before the Court in Gatlin v. State, 219 Miss. 167, 68 So.2d 291 (1953), where the defendant moved that the case be passed "for two or three days." Ruling that his motion was defective, this Court stated the "request to pass the case did not meet the requirements of Section 1520." Gatlin further held that the granting or denial of a continuance is largely in the discretion of the trial court. Douglas and Gatlin require affirmance of this case unless we overrule them.
No charge has been made or evidence presented that the removal of the witness Robinson from the jail to Parchman resulted from trickery, deceit or improper motive on the part of the state, or that his removal was contrary to any statute. Appellant's counsel (who also represented Robinson) knew better than anyone else whether Robinson's presence was necessary. Therefore, due diligence required at least a request for process upon Robinson especially where, as here, the record does not show that his removal was contrary to any established policy of the trial court, local practice, or long usage regarding the removal of convicts to the penitentiary.
The record shows that when brought back, while testifying on direct examination at the hearing of appellant's motion for a new trial, Robinson testified that the appellant was unknown to him and was not with him when Howard Brothers Pharmacy was burglarized. Yet on cross-examination of Robinson, the following question was put to him: "You're not telling the Court that Gary McClendon didn't burglarize Howard Brothers Pharmacy, are you?" His answer was in the negative. At another place he indicated, in the language of the circuit judge, that he was without knowledge "that Gary McClendon broke into that drug store... ." Also noteworthy is the fact that after making his skimpy unsworn motion ore tenus for time to procure Robinson's presence, when the state put on its proof and rested, the appellant failed to renew his motion for additional time and rested without putting on any proof whatsoever.
Our view is that the trial court did not abuse its discretion in refusing to grant appellant time in this case and it is not shown that any injustice has resulted. The jury accepted the version of the state as true and convicted the appellant, and since no reversible error was made, the case must be affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON, P.J., and ROBERTSON and SUGG, JJ., concur.
INZER, P.J., and WALKER, SMITH and LEE, JJ., dissent.
SMITH, Justice (dissenting):
The question in this case is whether McClendon received a fair trial. In my view he did not.
McClendon was convicted of having burglarized a drugstore and was sentenced to serve seven years in the penitentiary.
Near midnight, a patrolman, answering a silent alarm, arrived at the drugstore from which it had originated. There he found one Robinson seated in a parked automobile. At that moment, a man ran out of the store, appeared to place something in Robinson's automobile, and unsuccessfully attempted to get in it. The officer was unable to observe the features of this man but said that he had worn a dark shirt with somewhat lighter trousers. Robinson started *890 up his car and drove away, closely pursued by the officer in his patrol car, leaving behind the man who had run out of the store. Robinson's car was wrecked after reaching the public road when he attempted to cut in front of the officer. The officer testified that he got Robinson out of his wrecked car "after some persuasion," handcuffed him, and drove him back to the parking lot on which the drugstore fronted. The officer said that, as he started in pursuit of Robinson, the man who had come out of the drugstore started running north toward Hanging Moss Creek. On his return, the officer found McClendon, the appellant here, who was running south. The theory of the prosecution is that McClendon was the man who had run out of the drugstore.
The officer said he was "bearing down on the subject (McClendon) at a high rate of speed" telling him to stop or he would shoot. At this time McClendon, in his flight, reached a seven or eight foot fence, which separated the parking lot from an apartment complex. He attempted to get over this fence but was unable to do so. As the officer expressed it:
Like I say, I did have my revolver on this subject. I had him up against the fence. I did tell him not to move or I would shoot. He made the statement, `Don't shoot.' One statement I distinctly remember, `Don't shoot. I did it.' And `Don't shoot. You've got me.' I believe is what it was.
It was discovered that McClendon was barefooted and a pair of shoes were discovered somewhere on the parking lot.
No point is made here of the dubious voluntariness of McClendon's statement, "Don't shoot, I did it" made under the above circumstances.
Robinson was tried and convicted of burglary in the Circuit Court of Hinds County a few days before McClendon's trial on the same charge was scheduled to begin on November 20.
The jail in which Robinson was confined pending his removal to the penitentiary was on the floor above the courtroom in which McClendon's trial was taking place. McClendon's attorney had conferred with Robinson prior to the trial and intended to use him as a defense witness who would testify that he had not been acquainted with McClendon at the time of the burglary but that he had met him in jail and that McClendon was not the man who had run out of the store and had attempted to get in Robinson's car. Obviously this testimony was vital to McClendon's defense, particularly since there was no other witness who could so testify.
McClendon's trial began on November 20 and continued until noon when a recess was taken by the court until 1:30. During the noon recess, McClendon's attorney went upstairs to the jail for the purpose of having Robinson brought down to testify. He then learned for the first time from the jail officials that officers had left with Robinson about forty-five minutes before to transport him to the penitentiary at Parchman. When the court reconvened, at 1:30 that afternoon, McClendon's attorney immediately acquainted the trial court with what had occurred. The trial judge also was informed that Robinson could be brought back by the officers from Parchman that same afternoon if the judge should so order.
The defense then moved the court to recess the trial until 9:00 the next morning, November 21, or until such later time as would enable the officers to bring Robinson back so that McClendon might have the benefit of his testimony.
The court responded to the motion by conducting a close inquiry of McClendon's attorney as to whether he had not been offered by the prosecution to allow McClendon to plead guilty and take six years imprisonment. The relevancy of this to the matter before the court is not readily apparent.
It was pointed out to the court that Robinson had been in custody in jail, pending transfer to the penitentiary, and that the sudden removal of Robinson to Parchman *891 by State officials had been unexpected, that passing the case until 9:00 the next morning could in nowise prejudice the prosecution, that no subpoena had been issued for the witness because he was in the legal custody of the State, confined in a jail above the courtroom in which the trial was taking place and that an order for Robinson's return should be entered.
In response, the court ordered that a radio message be dispatched to determine whether the officers could have Robinson back that day. Then the court said this:
The Court finds it a fact that as of yesterday the District Attorney's office offered this defense attorney six years for this crime in the State Penitentiary as an offer of settlement, and defense attorney came to this Court and asked if it would accept five years with two suspended and three to serve, and this Court advised that he would not say yes or no at that time. And based on information as of last night, that offer still stood.
So I overrule the motion to recess and continue, although the Court will try to have this man back this afternoon prior to the completion of this trial.
As it developed Robinson was, in fact, returned to the county jail about 8:00 that night, but this was several hours after the trial had been concluded.
Following the discussion of the plea bargaining already mentioned, the trial resumed. The prosecution put on another witness who identified and testified at some length about numerous articles said to have been taken from the drugstore. The record does not reflect the hour at which the last witness concluded his testimony, or when instructions were presented or when argument of counsel was concluded. It seems almost certain, however, that the afternoon must have been far spent.
At the hearing of a motion for a new trial following McClendon's conviction, Robinson did, in fact, give positive testimony to the effect that, (1) he had not been acquainted with McClendon prior to the occasion on which he, Robinson, had been arrested in connection with the drugstore burglary, (2) the man who had come out of the drugstore there to get in his, Robinson's car, was not McClendon and (3) that he, Robinson, had not been a party to the drugstore burglary himself.
No one does or can question the fact that if this testimony on the part of Robinson had been submitted to the jury and the jury had believed it (and it would have been their sole prerogative to believe it or not to believe it), McClendon must have been found not guilty.
The action of the court in denying McClendon's request to pass the case until 9:00 the next morning, when it was known that the State could have their prisoner present, is sought to be justified on the single ground that defense counsel had omitted to have a subpoena issued for the prisoner Robinson and therefore could not complain of his absence. Taking the afternoon recess an hour or so earlier than usual would have enabled the State to bring back their prisoner in time to testify when court convened at 9:00 the next morning. This would have prejudiced nobody.
Commitment of persons to the penitentiary who have been convicted (as Robinson had been a few days before) is regulated by Mississippi Code Annotated section 99-19-45 (1972), which provides, in part:
The clerks of the circuit court of the several counties in the State of Mississippi shall furnish the secretary of the Mississippi Penitentiary Board, within five days after adjournment of court, a commitment paper showing the name of the person convicted, the crime, term of sentence, date of sentence, sex, color and a brief history of the crime committed.
The removal of Robinson by the State, in the midst of McClendon's trial, was not foreseen by his counsel. While Robinson's removal appears to have been premature, counsel stated that his failure to have the subpoena issued for the prisoner Robinson, who languished upstairs over the courtroom in jail, was because he relied on what he said was the "custom" in such cases of *892 merely "sending upstairs" when the presence of a prisoner was desired as a witness in the course of a trial.
Requiring compliance with reasonable rules of procedure is indispensable to the orderly administration of justice. There is a point, however, beyond which the cutting off of a fundamental right because of an omission to comply with a procedural rule may become arbitrary and oppressive, particularly, as here, where no prejudice will result to anyone. The passing of the case until 9:00 the next morning, under the circumstances of this case, in order that McClendon might have the benefit of Robinson's testimony, particularly where Robinson was a prisoner of the State whose movements were only such as the State might dictate, and who was at all times in the custody and control of the State, is to place a disproportionate emphasis and value upon the formality of the subpoena, since the subpoena, in such a situation, could be no more than a formality. The importance of giving the defendant a fair trial before an impartial jury upon all available evidence far outweighs any conceivable inconvenience (as distinguished from prejudice) that could have resulted in taking the afternoon recess an hour or so earlier than usual.
No one questions the proposition that a trial judge possesses discretion in deciding whether or not to pass a case to a later hour. But the discretion contemplated is sound judicial discretion, and is not wholly uncontrolled or unrestricted. It does not permit arbitrary or unreasonable action. It must be the result of sound judgment formed upon all of the circumstances, with due consideration and weight being given to the respective alternatives involved and to their relative importance.
To say that, on a motion to pass a case to a later hour, a trial court is vested with discretion, is to state a well known general principle. But when, in the course of a trial, the trial court is confronted with unusual circumstances such as those in this case, whereby it becomes his duty to choose between granting a few hours harmless delay or cutting off the right of a defendant in a criminal case to have present the only witness who will or can testify to his innocence, the latter so far and so clearly outweighs the former that, in order to comply with the fundamental concept implicit in the phrase "sound judicial discretion" requires that the court grant the delay.
The conviction of McClendon under the above circumstances, in my view, runs counter to traditional notions of fair play and the doing of substantial justice and amounted to a denial of his constitutional right to a fair trial. The conviction should be reversed and the case remanded for a new trial.
INZER, P.J., and WALKER and LEE, JJ., join this dissent.