# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01083-COA

**DARRYL METCALF A/K/A PEANUT**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                       **APPELLEE**

DATE OF JUDGMENT:                07/22/2016
TRIAL JUDGE:                          HON. LINDA F. COLEMAN
COURT FROM WHICH APPEALED:   COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                                          BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                                          BY: JOSEPH SCOTT HEMLEBEN
DISTRICT ATTORNEY:               HONORABLE BRENDA FAY MITCHELL
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED - 02/12/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Darryl Metcalf was found guilty of two counts of sexual battery, attempted sexual battery, and fondling.  The Coahoma County Circuit Court sentenced him to fifteen years for fondling and twenty years for each of the other convictions.  Because all of the sentences were set to run concurrently, the circuit court effectively sentenced Metcalf to twenty years in the custody of the Mississippi Department of Corrections.  Metcalf appeals.  His appointed counsel argues that the circuit court erred by (1) excluding one of Metcalf's witnesses and (2) giving jury instructions that constructively amended two counts in the indictment.  Counsel also argues that Metcalf's trial counsel was ineffective.  Metcalf has filed a

supplemental pro se brief. After thorough review of the issues before us, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. This case stems from Metcalf's contact with M.W., who was four years old during the events that led to Metcalf's conviction.[1] M.W. lived with his mother, Deborah, and two siblings. Metcalf was twenty-four, and his family called him "Peanut." He lived with M.W.'s great-grandmother, Maggie, who cared for M.W. while his mother had to work.

¶3. On May 15, 2008, Deborah was preparing to go celebrate M.W.'s birthday when someone called from Maggie's apartment and asked Deborah to stop and pick up M.W.'s gifts. When M.W. learned that they would be stopping by Maggie's apartment, M.W. shut himself in his bedroom. A short time later, Deborah found M.W. crying in the corner. M.W. then told Deborah that "Peanut was messing" with him. According to Deborah, M.W. then elaborated that Peanut "sucked his penis, bit his penis, tried to put his penis in [M.W.'s] mouth . . . and was messing with his butt." After relaying M.W.'s revelation to Maggie, Deborah went to the police department and filed a report.

¶4. Authorities arranged Sarah Ward's forensic interview of M.W. Ward later reported that "M.W. did not provide any information or statements to corroborate the suspicion that he may have been sexually abused." Through her report, Ward recommended that "M.W. participate in psychotherapy for further assessment of possible sexual abuse." M.W. was referred to Shirley Long, a therapist at Region One Mental Health Center in Clarksdale, Mississippi. Long conducted twelve sessions with M.W. during the course of nearly a year.

---

[1] To protect the identity of the minor child, we substitute initials for his name.

According to Long, M.W. told her that "Peanut touched his ears, nose and mouth, and put [M.W.'s] 'ding-a-ling' in Peanut's mouth until it hurt," "Peanut tried to make [M.W.] put Peanut's penis in his mouth, but [M.W.] wouldn't open his mouth," Metcalf inserted an object into M.W.'s anus, and Peanut "took a gun from under the TV and put it to his head and told him he would kill him if he told anybody what he had done to him."

¶5.     Metcalf was indicted on December 7, 2009, and charged with two counts of sexual battery, one count of attempted sexual battery, and one count of fondling. The indictment originally alleged that the offenses occurred between January and March 2008. Metcalf's trial was delayed for a significant period after the defense successfully moved for a mental competency evaluation.

¶6.     In November 2015, the prosecution moved to amend the indictment to allege that the offenses occurred between January 1, 2008, and May 15, 2008. As the prosecution noted, the "date of disclosure was May 15, 2008 . . . [, and] all discovery tendered to the defense contemplates this date as the day when M.W.'s mother first became aware of the sexual abuse allegedly committed by" Metcalf. On January 14, 2016, the circuit court granted the prosecution's motion over the defense's objection. During the same hearing, the circuit court conducted a competency hearing. Based on testimony from Dr. Amanda Gugliano and Dr. Reb McMichael, the circuit court held that Metcalf was competent to stand trial.

¶7.     Additionally, defense counsel noted that he was unable to find Ward, who no longer worked at the Family Crisis Center where she interviewed M.W. Defense counsel announced that he would try to introduce her report into evidence if he could not find Ward, and the

3

prosecution noted the procedural difficulty involved with defense counsel's plan. The circuit court ultimately took the parties' positions under advisement.

¶8. Five days later, the defense requested a continuance so that it could continue looking for Ward. The prosecution objected, noting the various delays already incurred, including the setback caused by Metcalf's competency hearing. The circuit court granted the continuance and appointed an investigator to help defense counsel find Ward.

¶9. On May 18, 2016, the parties finally convened for Metcalf's trial. Before the prosecution began its case-in-chief, the circuit court heard the prosecution's motion to introduce M.W.'s testimony through Deborah and Long. After hearing their proffered testimonies, the circuit court granted the prosecution's motion.

¶10. The prosecution first called Assistant Police Chief Robbie Linley, of the Clarksdale Police Department, who, in 2008, was a captain supervisor of the department's Investigative Services Division. Chief Linley testified that he took over the investigation of Metcalf's case from another investigator who resigned. He further testified that during the investigation, it was established that Metcalf went by the nickname "Peanut," and that at the time of the crime, Metcalf was twenty-four years old. Chief Linley stated that in 2008, M.W. was four years old. Chief Linley also provided an in-court identification of Metcalf.

¶11. Next, Investigator Myette Dawson testified that he had been employed with the Clarksdale Police Department in 2008 and was the original investigator of Metcalf's case. Investigator Dawson testified that he spoke with Deborah and made an initial report concerning the abuse allegations on May 16, 2008. He said that after speaking with Deborah,

he referred M.W. for a forensic interview at the Family Crisis Center. Investigator Dawson confirmed M.W.'s and Metcalf's ages at the time of the incident.

¶12. The State next called Deborah to testify. She testified about M.W.'s disclosure of sexual abuse, including that M.W. told her that "Peanut" "sucked his penis, bit his penis, tried to put his penis in [M.W.'s] mouth . . . and was messing with his butt." Deborah also testified that M.W. had been negatively affected by the event, and often wet his bed and bit his arm. She identified Metcalf as the defendant.

¶13. Long testified about her treatment of M.W. and the disclosures M.W. made during therapy sessions, including that "Peanut" touched M.W.'s ears, nose, and mouth; put M.W.'s penis in his mouth; inserted an object into M.W.'s anus; and held a gun to M.W.'s head and threatened to kill M.W. if he told anyone about these actions. Long further testified that M.W.'s version of events remained consistent over his twelve-session treatment.

¶14. M.W. was the last witness to testify for the State. He testified that he was twelve years old and was born in May 2004. M.W. identified Metcalf as the person who molested him and whom he knew as "Peanut." M.W. testified that Metcalf molested him when he was four years old at his grandmother's house in Willow Park. According to M.W., he was exiting the restroom when Metcalf grabbed him and took him to a back room. Metcalf put his fingers to M.W.'s lips, and tried to make him suck his penis. M.W. said that when he refused, Metcalf pulled down his pants and bit his penis. M.W. also testified that Metcalf put a gun to his head and said that if he told anyone what had happened, Metcalf would shoot him. M.W. could not say exactly what Metcalf inserted into his anus because he was turned

the other way.

¶15. Following M.W.'s testimony, the prosecution rested. Metcalf moved for a directed verdict, which the circuit court denied. Then, trial was adjourned.

¶16. On the second morning of trial, May 19, 2016, the parties met in chambers to discuss a matter brought by the defense. During the meeting in chambers, the defense informed the circuit court that Ward had contacted him on the previous evening and said she would be available to testify the next day, on May 20. Defense asked the circuit court to delay trial until then. After hearing arguments from both parties, the trial court ultimately excluded Ward from testifying because Ward was not properly subpoenaed and was therefore not subject to the circuit court's authority, and because Ward's name was neither included on the witness list nor disclosed during voir dire. Further, the circuit court noted that it had appointed the defense an investigator at the State's expense on January 27, 2017, to assist the defense's location of Ward, and that after hearing from the defense, the circuit court did not "believe a diligent effort was made to locate Ms. Ward."

¶17. Next, the defense moved to admit statements Deborah made to Long during M.W.'s initial intake; namely, that M.W. did not disclose sexual abuse during his forensic interview. After hearing arguments from counsel, the circuit court ruled that the statements could be admitted pursuant to Mississippi Rule of Evidence 803(4) as statements made for the purpose of medical diagnosis or treatment.

¶18. The defense then proceeded with its case-in-chief, recalling Long to testify. When asked what information she received from Deborah regarding M.W.'s forensic interview,

6

Long testified that Deborah told her that M.W. did not disclose any abuse to Ward because Ward referred to Metcalf by his given name, rather than "Peanut," the name M.W. knew him by.

¶19.　Metcalf testified in his own defense.　Metcalf categorically denied committing the allegations of abuse against him.　During cross-examination, he admitted that his family and M.W. referred to him as "Peanut."

¶20.　After the defense rested, it renewed its motion for a directed verdict, which the circuit court denied.　Outside the presence of the jury, the defense gave a proffer of Ward's forensic interview of M.W., which was marked as Exhibit 1.

¶21.　As previously mentioned, the jury found Metcalf guilty of both counts of sexual battery, attempted sexual battery, and fondling.　The circuit court denied Metcalf's motion for a judgment notwithstanding the verdict (JNOV) or in the alternative, a motion for a new trial.　Metcalf has timely appealed.

## ANALYSIS

### I.　Sarah Ward

¶22.　"Trial judges have wide latitude in deciding whether to grant continuances, and that decision is left to the sound discretion of the trial judge." *Miles v. State*, 249 So. 3d 362, 368 (¶32) (Miss. 2018).　"Denial of a continuance is not reversible unless manifest injustice appears to have resulted from the denial." *Id.*　Here, the circuit court's denial of the request to continue trial was not an abuse of discretion, and no manifest injustice resulted from the denial of the postponement.

7

¶23.    Mississippi Code Annotated section 99-15-29 (Rev. 2015) governs whether counsel is entitled to a continuance due to an absent witness.  Section 99-15-29 requires that counsel file an affidavit setting forth, among other things, that he has "used due diligence to procure . . . the presence of the absent witness . . . stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done."  "Embraced therein is the requirement that counsel has made a timely effort to place the absent witness under a subpoena."  *Triplett v. State*, 666 So. 2d 1356, 1361 (Miss. 1995); *see also Pinson v. State*, 518 So. 2d 1220, 1222 (Miss. 1988); *Watson v. State*, 465 So. 2d 1025, 1030 (Miss. 1985). "Failure of counsel to issue subpoenas even for friendly, favorable witnesses is perilous, because if for some reason the witness fails to appear, a pre-requisite for continuance is that he or she is either under process or a reasonable effort has been made to serve him or her with a subpoena."  *Triplett*, 666 So. 2d at 1361.

¶24.    In *McClendon v. State*, 335 So. 2d 887, 889 (Miss. 1976), the Mississippi Supreme Court affirmed the denial of the defense's ore tenus motion for a delay due to an unsubpoenaed absent witness where there was no formal motion for a continuance or postponement as required by statute.  The *McClendon* court stated:

> As noted in Black's Law Dictionary 1250 (4th ed. 1951), "pleading was anciently carried on ore tenus, at the bar of the court."  Exigencies which arise during the course of present day court trials are often rightly met with such pleadings, but the substance and content of such pleadings required by a statute cannot be ignored.  Here, had the ore tenus motion (not conforming with the statutory requirements) been upheld, appellant would have been allowed to accomplish with such a deficient informal pleading what this Court has repeatedly held could not be done except by a written sworn motion.

*McClendon*, 335 So. 2d at 889; *see also Gatlin v. State*, 219 Miss. 167, 171-72, 68 So. 2d

8

291, 292 (1953); *Douglas v. State*, 212 Miss. 176, 180-81, 54 So. 2d 254, 255-56 (1951) (affirming convictions where there was no formal motion for a continuance or postponement as required by statute).

¶25. The record reveals that the defense made an unsworn motion ore tenus to postpone trial until the next day. The circuit court declined to delay trial for several reasons: Ward was not properly served with a subpoena; the defense was not diligent in its efforts to locate Ward; and Ward's name was stricken from the witness list. Under these facts, we cannot say the circuit court abused its discretion in denying the motion. Further, there is no indication that Metcalf suffered a manifest injustice resulting from the denial of a continuance because the substance of Ward's report—that M.W. did not report any instance of sexual abuse during his forensic intake interview—was covered in Long's testimony. This issue is without merit.

## II.     Variance Between Indictment and Jury Instruction 7

¶26. On appeal, Metcalf claims for the first time that the circuit court constructively amended Counts One and Four of the indictment against him when it gave Jury Instruction 7, an elements-instruction that addressed each count in the indictment.

### A.     Count One: Sexual Battery

¶27. Count One charged Metcalf with violating Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014) by sexually penetrating M.W., who was under fourteen years old, by inserting his penis into M.W.'s anal opening. Jury Instruction 7 allowed the jury to convict Metcalf of sexual battery upon a finding that Metcalf inserted his "penis and/or object" into

M.W.'s anal opening. According to Metcalf, the inclusion of the words "and/or object" broadened the grounds for conviction and lessened the prosecution's burden of proof.

¶28. Metcalf did not object to Instruction 7 as constructively amending Count One; in result, he has waived this issue. *See Faulkner v. State*, 109 So. 3d 142, 146 (¶12) (Miss. Ct. App. 2013) (explaining that failure to object to a variance between an indictment and a jury instruction renders the issue procedurally barred on appeal). Accordingly, we can review Metcalf's claim only for plain error. *See Young v. State*, 194 So. 3d 904, 910 (¶20) (Miss. Ct. App. 2016).

¶29. In this instance, the instruction was not erroneous, let alone plainly erroneous. As the State points out, this Court has held that "the particular method of achieving sexual penetration is not an element of the offense of sexual battery." *Id.* at (¶21) (internal quotation marks omitted). "'Sexual penetration' includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code Ann. § 97-3-97(a) (Rev. 2014). The jury unanimously convicted Metcalf of sexually penetrating M.W., which is the essence of the offense of sexual battery. *See Young*, 194 So. 3d. at 910 (¶21). Accordingly, Metcalf's challenge to this portion of Jury Instruction 7 is without merit.

### B. Count Four: Fondling

¶30. Count Four charged Metcalf with violating Mississippi Code Annotated section 97-5-23 (Rev. 2014) by touching or rubbing M.W.'s private parts with his hands for the purpose

of gratifying his lust or indulging in his sexual desires. Jury Instruction 7 did not reference M.W.'s private parts; it allowed the jury to convict Metcalf of fondling if it found that Metcalf handled, touched, or rubbed M.W. with his hands, any part of his body, or with any object. Metcalf argues Jury Instruction 7 broadened the grounds for conviction by allowing the jury to convict Metcalf "for touching [M.W.]'s ear or face with a hand."

¶31. The record reveals that the language in Jury Instruction 7 pertaining to Count Four was revised at Metcalf's request. The relevant portion of the prosecution's proposed jury instruction allowed the jury to convict on Count Four if it found Metcalf "handle[d], touch[ed] or rub[bed] with his hands the private parts of M.W. . . . ." During the jury instruction conference, defense counsel objected to the Count Four in the instruction and recommended that it track the statute. The trial court acquiesced:

> [DEFENSE] Yeah. We were objecting to S1-A, Count IV. I believe that based on the language contained in the instruction, it does not set out [] an offense under the law.
>
> . . . .
>
> [COURT] Mr. Tisdell, what is your recommendation, that it track the statute?
>
> [DEFENSE] Yes, ma'am.
>
> . . . .
>
> [COURT] Okay. So we're going to . . . track the statute, "handle, touch or rub with hands any part of his body or any member of the body with an object, a male child under the age of 14 years."
>
> [DEFENSE] (INDICATED BY NODDING HEAD.)

¶32. "It is axiomatic that a defendant cannot complain on appeal of alleged errors invited

or induced by himself." *Thomas v. State*, 249 So. 3d 331, 347 (¶55) (Miss. 2018) (internal quotation omitted); *see also Harris v. State*, 861 So. 2d 1003, 1015 (¶24) (Miss. 2003); *Buford v. State*, 372 So. 2d 254, 256 (Miss. 1979) (applying the invited-error doctrine to jury instructions). We decline to find error where the defendant objects to an elements instruction, succeeds on his objection, and then complains about the revision he proposed. The invited-error doctrine prohibits us from considering this issue; thus, we affirm.

### III. Ineffective Assistance of Counsel

¶33. Metcalf argues that his trial counsel was constitutionally ineffective for "failing to secure Ward['s] presence at trial and failing to lay the foundation to introduce Ward's report to impeach Deborah and [M.W.]."

¶34. "A claim of ineffective assistance of counsel requires proof that counsel's performance was objectively deficient *and* that the defendant suffered prejudice as a result." *Worth v. State*, 223 So. 3d 844, 849 (¶17) (Miss. Ct. App. 2017) (emphasis added) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Under *Strickland*'s first prong, the defendant must overcome a strong but rebuttable presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Id.* "To overcome this presumption, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Smiley v. State*, 815 So. 2d 1140, 1146-47 (¶25) (Miss. 2002) (quoting *Schmitt v. State*, 560 So. 2d 148, 154 (Miss. 1990)).

¶35. While this Court may consider the merits of a claim for ineffective assistance of

counsel raised for the first time on direct appeal, it is unusual to do so because "we are limited to the trial court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim." *Ragland v. State*, 50 So. 3d 1041, 1044 (¶8) (Miss. Ct. App. 2010). The appropriate conclusion is usually "to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief." *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2003) (citing *Read v. State*, 430 So. 2d 832, 837 (Miss. 1983)). We will reach the merits on an ineffective-assistance claim only in instances where "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003).

¶36. In this case, the record does not affirmatively show ineffectiveness of constitutional dimensions, and the State does not stipulate that the record is adequate to review this issue. We therefore dismiss Metcalf's ineffective-assistance-of-counsel claim without prejudice so that he may pursue the claim in a properly filed motion for post-conviction relief. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015).

### IV. Metcalf's Pro Se Supplemental Brief

¶37. Metcalf's brief suggests that he intends to raise one "Supplemental Issue" that he describes as follows: "Ask for dismissal/A perceived discovery 'violation.'" Even after carefully reviewing Metcalf's pro se supplemental brief, it is exceedingly difficult to understand his argument.

13

¶38.   Where an appellant proceeds pro se, this Court takes that fact into account so that any meritorious claim is not lost due to inartful drafting. *Gatewood v. State*, 909 So. 2d 754, 756 (¶4) (Miss. Ct. App. 2005). "However, we are also mindful that pro se parties should be held to the same rules of procedure and substantive law as represented parties." *Bessent v. Clark*, 974 So. 2d 928, 932 (¶14) (Miss. Ct. App. 2007).

¶39.   The State interprets Metcalf's brief as though he raised two new issues: (1) whether Metcalf's trial counsel was constitutionally ineffective for failing to object to the amendment of his indictment and (2) whether the trial court erred by failing to conduct a hearing pursuant to Rule 803(25).[2] In doing our best to understand Metcalf's meaning, we agree that his brief raised these issues. We further note that in his supplemental reply brief, Metcalf did not disagree with the State's framing of his issues.

## A.   Ineffective Assistance

¶40.   First, Metcalf seems to claim that his trial counsel was constitutionally ineffective for failing to object to the amendment of his indictment. Because a review of the record reveals that Metcalf's counsel *did* in fact object to the indictment's amendment, we find Metcalf's claim is without merit.

¶41.   On November 17, 2016, the State filed a motion to amend the indictment pursuant to

---

[2] According to the State, Metcalf also claimed that the trial court should have allowed Ward to testify, and Jury Instruction 7 constructively amended Counts One and Four of Metcalf's indictment. The State is correct that Metcalf was prohibited from reiterating issues that his appointed appellate counsel had already raised. *See* M.R.A.P. 28(b) ("An appellant in a criminal appeal may file a pro se supplemental brief . . . address[ing] *issues not raised by counsel* . . . ."). (Emphasis added). Having fully addressed these issues already, we decline to revisit them.

14

Rule 7.09 of the Uniform Rules of Circuit and County Court Practice to correct the dates of the crime. As it originally stood, the indictment alleged that the crimes occurred on or between January 2008 and March 2008. The State moved to amend the indictment to allege that the crimes occurred on or between January 1, 2008 and May 15, 2008, as "the date of disclosure was May 15, 2008 . . . [, and] all discovery tendered to the defense contemplates this date as the day when M.W.'s mother first became aware of the sexual abuse . . . ." The circuit court heard arguments on the prosecution's motion on January 14, 2016. During the hearing, Metcalf's trial counsel objected to and argued against the State's motion to amend the indictment. The circuit court ultimately allowed the amendment, finding it was one of form rather than substance. In light of trial counsel's objection, Metcalf's claim fails under *Strickland*. *See Strickland*, 466 U.S. at 687.

### B.    803(25) Hearing

¶42.    Hearsay is inadmissible unless the law provides an exception. M.R.E. 802; see M.R.E. 803 (exceptions that apply regardless of whether the declarant is available to testify); M.R.E. 804 (exceptions that apply only when declarant is "unavailable" to testify). This issue concerns Rule 803(25)'s exception for "statement(s) made by a child of tender years describing any act of sexual contact with or by another[.]" M.R.E. 803(25). Under Rule 803(25), such statements are admissible if:

> (A) the court—after a hearing outside the jury's presence—determines that the statement's time, content, and circumstances provide substantial indicia of reliability; and
>
> (B) the child either:

15

(i) testifies; or

(ii) is unavailable as a witness, and other evidence corroborates the act.

¶43. Metcalf argues that "the trial court erred in allowing [Long][,] a forensic psychologist[,] to testify . . . as the trial court made no findings as to the reliability of the hearsay statement and did not conduct a hearing outside the presence of the jury as required by" Rule 803(25).

¶44. We review the admission of evidence for abuse of discretion. *Palmer v. State*, 986 So. 2d 328, 331 (¶12) (Miss. Ct. App. 2007). Contrary to Metcalf's assertion, the circuit court held a hearing outside the presence of the jury and made detailed on-the-record findings concerning M.W.'s statements to Long.

¶45. On May 18, 2016, the circuit court conducted a hearing outside the presence of the jury concerning the State's "Motion to Offer MRE 803(25) Evidence." During this time, the circuit court heard proffered testimony from Long, the therapist who began treating M.W. in July 2008, as well as M.W.'s mother, Deborah. After receiving the testimony and hearing argument from counsel, the circuit court found that M.W., who was four years old at the time he made statements to Long and Deborah concerning sexual abuse, was a child of tender years. In her on-the-record finding, the trial judge stated:

> Based on Ms. Long's educational and professional background, the court finds that she is a credible witness.
>
> She testified that she first saw M.W. . . . in July of 2008, for 11 sessions; and with the initial session that was for 12 sessions. The amended indictment alleges the dates of the sexual battery to have occurred between January 2008 to May 2008.

16

And with M.W. first consulting with Ms. Long in July, the Court finds that his conversations with her were in close proximity to the alleged events.

Ms. Long testified that throughout the 12 sessions with M.W. . . . his testimony was consistent and did not change, and she believes M.W. . . . was a credible witness. And as a trained professional, the Court finds that she can make that determination.

She also indicated that she did not know of any motive that the child would have had to be untruthful.

When asked if M.W. . . . was prompted . . . to tell of the alleged sexual abuse, [Long] simply stated that she said to the child, "Tell me what happened," and the child commenced to tell what happened.

Based on this testimony there is absolutely no suggestive technique used, whatsoever, to elicit the allegations from M.W. . . . and, therefore, the Court finds that the events, as related to Ms. Long by M.W. . . . are reliable, and she will be able to testify as to these events in court.

As to [Deborah], the Court finds that M.W.'s initial conversation with his mother regarding the alleged abuse was a spontaneous one. They were preparing for a birthday party, and when he learned that he had to return to the location of the alleged events, he started to exhibit strange behavior by locking himself into a room.

It was not until the mother managed to kick the door in that the child revealed to her why he did not wish to go to the location.

Based on the testimony and all of the events surrounding it as related through the testimony, these accounts . . . [are] more probable to be true.

At the time he made the statements, it was close to the alleged abuse[.] The amended indictment states the date of the abuse to be January 2008 until May of 2008, and it was . . . [on] May 15th when M.W. . . . first told these events to his mother. And, because of the close proximity in time, the Court finds that his recollection is probably accurate.

There is no motive as to why M.W. . . . would lie about this occurrence. And the way in which M.W. . . . revealed these episodes to his mother indicates that they are not concocted or fabricated.

¶46. As the trial judge conducted a hearing outside the jury's presence and made detailed findings on the record in accordance with Rule 803(25), we find this issue is without merit.

## CONCLUSION

¶47. The circuit court committed no reversible error in its rulings below. Therefore, we affirm Metcalf's convictions and sentences. We also preserve his right to raise his ineffective-assistance-of-counsel claim regarding Ward's presence and the use of her report for cross-examination purposes in a properly filed motion for post-conviction relief. *See Knight v. State*, 72 So. 3d 1056, 1062 (¶22) (Miss. 2011).

¶48. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**