412 So.2d 1181 (1982)
Dwight Wayne BIRCHFIELD
v.
STATE of Mississippi.
No. 53377.
Supreme Court of Mississippi.
April 21, 1982.
*1182 Ben F. Hilbun, Jr., Starkville, for appellant.
Bill Allain, Atty. Gen. by Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and ROY NOBLE LEE and DAN M. LEE, JJ.
PATTERSON, Chief Justice, for the Court:
Dwight Wayne Birchfield, alias "Bullbox", was indicted and tried for rape of a female over the age of twelve years. He was found guilty by the jury and sentenced to life imprisonment by the Circuit Court of Oktibbeha County. Birchfield assigns numerous errors of the trial court on appeal, but since he fails to cite any authority on several, only two assignments require consideration by this court.
Juanita Davis, 22 years of age, left her home during the evening of January 3, 1981, to walk a short distance to the home of Larry Poe. As she was walking she met a man known to her as "Bullbox" who asked her to "come here." She ignored his request and continued on her way. He then seized her, putting his hand over her mouth. He pulled her around behind a house, threw her to the ground, and ripped her clothes off. Miss Davis testified that she screamed and struggled but was told if she did not "shut up" he would stab her. She testified that she resisted her assailant's advances by kicking and pushing, but her resistance was to no avail. She testified "Bullbox" then raped her and ran away. Immediately thereafter Miss Davis ran for help and encountered a friend who took her to the Starkville Police Department and later, she was taken to a hospital and examined. Although upset and nervous, she nevertheless identified "Bullbox" as her assailant from photographs shown her.
Karen Outlaw, a witness for the state, testified that she lived in close proximity to the area where the rape occurred and heard Miss Davis scream and glanced out her window and saw Miss Davis struggling with someone. She also stated that when the screams subsided she returned to bed. Another witness for the state, Carol Davis, testified that she heard Miss Davis scream, looked out her window, but seeing no one she returned to bed.
The appellant testified that he had intercourse with Miss Davis but with her consent. He stated that Juanita became upset and reported him for rape because he had offered to pay her but did not do so.
A medical examination shortly after the incident disclosed seminal fluid in Miss Davis' vagina as well as in her underclothes. The examination also revealed bruises on her face and a slight cut on her finger. Later, pursuant to a judicial warrant, a blood sample was taken from the appellant's body and compared through medical process with the seminal fluid found in the victim's underclothes. The blood-semen analysis disclosed the semen specimen was compatible to the blood type of the appellant. From this conclusion there was testimony that the appellant fell within a group of male persons, about 36%, who could have secreted the semen specimen.
The appellant argues the trial court erred in permitting into evidence the results of the analysis of the blood-semen test. He first contends that he had previously been indicted and that jurisdiction for the issuance of the warrant for a blood test was exclusive to the circuit court and therefore, *1183 the municipal judge who issued the warrant was without authority to do so. No authority is cited for this postulate and neither is it contended by the appellant that he was prejudiced by the warrant's issuance from a municipal judge instead of the circuit judge. Moreover, there is no contention the issuing judge was not a neutral and detached magistrate as required by Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
Section 21-23-7 of the Mississippi Code Annotated (Supp. 1981), provides the authority and duties of a municipal judge, including the following:
The municipal judge may ... issue ... warrants for arrest ... under seal of the court to any county or municipality, in a criminal case, to be executed by the lawful authority of the county or the municipality of the respondent, and enforce obedience thereto.
We are of the opinion the municipal judge had the authority to issue the warrant upon sufficient evidence of probable cause. Additionally, we do not think the appellant was prejudiced because his attorney was not notified of the warrant and the subsequent withdrawal of blood. No contention is made of counsel's ability to assist the petitioner in protection of his legal rights had he been present. We, therefore, think this assignment of error is without merit.
The greater question is whether the blood test violated the appellant's fourth amendment constitutional privilege, "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV (Emphasis added). Of course, the fourth amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified or which are made in an improper manner.
In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), blood was drawn, in an emergency situation, so that its alcoholic content could be measured as close in time to an automobile accident as reasonably possible. Although Schmerber involved a warrantless search, the Supreme Court of the United States held the drawing of blood was permissible and not violative of the fourth amendment principle under those circumstances. This indicates rather positively, we think, that bodily intrusions are not prohibited by the constitution but rather depend upon their reasonableness under the particular circumstances of each case. Although the facts of Schmerber are different from the present, we nevertheless agree with the principle there laid down:
Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that the inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367 [368-69] 92 L.Ed. 436, 440; see also Aguilar v. Texas, 378 U.S. 108, 110, 111, 84 S.Ct. 1509 [1511, 1512] 12 L.Ed.2d 723, 725, 726. The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great. 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919.
Modern technology in the detection of crime cannot be ignored and if pursued within the reasonable standards of the fourth amendment, there is no constitutional infringement. We, therefore, are of the opinion this assignment of error is without merit.
Incidental to the above, we also observe the blood-semen test could have been a protection to the appellant had the analysis disclosed the appellant was within a group of persons who could not have secreted the specimen. In any event, the appellant's argument loses much of its force because his identity was not in question as he testified that he had intercourse with the prosecuting *1184 witness, thus leaving only the issue of whether the prosecuting witness was forcibly ravished or whether she consented.
The final assignment of error is that the verdict of the jury was against the overwhelming weight of the evidence. The record has been studied in detail and reveals ample testimony by the victim and corroborating witnesses to sustain the jury's verdict. We, therefore, affirm.
AFFIRMED.
SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and DARDEN, JJ., concur.