536 So.2d 1319 (1988)
Edward Epps DANIEL
v.
STATE of Mississippi.
No. 58151.
Supreme Court of Mississippi.
December 14, 1988.
*1320 Ross Parker Simons, Pascagoula, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Harrison S. Ford, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:
The appellant, Edward Epps Daniel (Spider), was indicted as an habitual offender pursuant to Miss. Code Ann. § 99-19-81 (1972), by a grand jury in Jackson County, Mississippi for the crime of sexual battery against a child under the age of twelve years. Daniel was tried and found guilty, by a jury, and then sentenced to a term of thirty years in custody of the Mississippi Department of Corrections. Daniel appeals assigning as error the following:
I. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF TESTS DONE ON BLOOD SAMPLES AND BODY-CAVITY SWABS TAKEN FROM THE APPELLANT.
II. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION IN LIMINE TO PROHIBIT THE STATE FROM INTRODUCING TESTIMONY OR EVIDENCE SHOWING THAT APPELLANT EITHER HAD GONORRHEA OR SEXUALLY TRANSMITTED GONORRHEA TO THE VICTIM.
III. THE TRIAL COURT ERRED IN ALLOWING THE APPELLANT TO BE CONVICTED OF A CRIME ALLEGEDLY COMMITTED ON JANUARY 17, 1986 WHEN THE STATE FAILED TO PUT ON PROOF THAT THE CRIME WAS COMMITTED ON THAT DATE.

STATEMENT OF FACTS
The appellant Edward Epps Daniel was indicted by the grand jury of Jackson County, Mississippi. The indictment alleged that Edward Daniel ("Spider") committed sexual battery upon Jacquelyn Broadnax, six years old at the time, on or about *1321 January 17, 1986. Appellant was indicted under Miss. Code Ann. § 99-19-81 as an habitual offender.
"Spider" was arrested on March 11, 1986 in Comeaux by the Comeaux Police Department. On March 13, 1986 "Spider" was transported to Pascagoula.
Detective Jo Ann Byrd and Ralph Holiman, Assistant District Attorney, appeared before Honorable Clinton Lockard, Circuit Judge in Pascagoula, and requested that the court "order that blood samples and body cavity swabbings be taken as a search incident to arrest" of "Spider" Daniel.
The court ordered that blood samples and swabbings of body cavities be taken by appropriate and qualified medical personnel and that the results of these tests be disclosed to any lawful police authority of the State of Mississippi.
Dr. Cathy Butts, a pediatrician at the Jackson County Health Department, testified that she performed the tests which revealed that Jackie had gonorrhea. Dr. Butts testified that Jackie's hymen had been torn and that there was scarring inside Jackie's vaginal vault. Dr. Butts testified that the scarring was consistent with sexual penetration and inconsistent with results which would occur by scratching. The doctor testified that Jackie had internal as well as external gonorrhea in the vaginal and anal areas.
Dr. Butts also testified that she tested "Spider" for gonorrhea. Dr. Butts testified that the test results revealed that "Spider" was infected with penile gonorrhea only.
Jackie Broadnax testified at trial. Jackie identified "Spider" and testified that he had molested her. It is not necessary for purposes of appeal that we discuss the details of Jackie's testimony. Suffice it to say that, Jackie unequivocally named "Spider" as the person who sexually abused her.
"Spider" Daniel testified at trial in his own defense. He denied committing sexual battery upon Jackie. "Spider" testified that Coretta Ezell had made sexual overtures towards him and that he had declined the overtures. "Spider" testified that Coretta became angry and persuaded Jackie to lie about him.
The jury returned a verdict of guilty of sexual battery against "Spider" Daniel. "Spider" was sentenced to thirty years, the maximum penalty under the statute, as an habitual offender. He appeals.

I. DID THE TRIAL COURT ERR IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF TESTS DONE ON BLOOD SAMPLES AND BODY CAVITY SWABS TAKEN FROM APPELLANT?
"Spider" Daniel argues that the introduction into evidence of the results of tests performed on blood samples and body cavity swabs taken from him was a violation of his Fourth and Fourteenth Amendment rights to be protected from unreasonable searches and seizures. The results of the tests revealed that "Spider" Daniel was infected with gonorrhea.
Prior to trial, "Spider" filed motions in limine to prohibit testimony being elicited or otherwise placed into evidence with reference to the fact that "Spider" Daniel had gonorrhea. The motion was overruled and the defense renewed the motion on the date the trial opened. The court overruled the motions.
At trial, Jo Ann Byrd testified that she had taken "Spider" to the health department to have him tested for gonorrhea after having obtained a court order. Dr. Catherine Butts testified that she performed the tests revealing "Spider" had gonorrhea. "Spider" testified that he had gone to the health department and had been informed by the doctor that he had gonorrhea.
We are called upon today to determine whether the aforementioned tests violated the appellant's Fourth Amendment constitutional privilege, "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. We must recognize that the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not *1322 justified or which are made in an improper manner. Birchfield v. State, 412 So.2d 1181, 1183 (Miss. 1982).
"Spider" argues here on appeal that the samples were taken from him in the absence of a valid search warrant and therefore violated his right to be free from unreasonable search and seizure.
The record reveals that Ms. Jo Ann Byrd, a detective with the Pascagoula Police Department and Ralph Holiman, an assistant district attorney, appeared before the Honorable Clinton Lockard, Circuit Judge in Pascagoula, and requested a search warrant to obtain blood samples and body fluids from "Spider" Daniel. Byrd and the assistant district attorney, Holiman, presented Judge Lockard with a "Motion for Search Incident" [sic] which set forth the reasons for requesting a search warrant authorizing the removal of blood and body fluids from "Spider" Daniel. The reasons set forth follow:
I. That a warrant for the arrest of "Spider" Daniel had been issued on March 10, 1986 on charges of fondling.
II. That minor victims in the case had informed police that "Spider" Daniel was the perpetrator.
III. That the minor victims had been diagnosed as having gonorrhea, a venereal disease.
IV. That the tests were necessary for the proper investigation of the case.
Honorable Clinton Lockard ordered the tests on March 11, 1986.
Appellant, on appeal, and for the first time, argues that the tests were taken without a warrant. The appellant argues that the search warrant was not a search warrant but an attempt by the State "to legitimize its unconstitutionally intrusive search and seizure through the use of a court order" obtained by use of a motion for a search incident to arrest.
In the case sub judice the question this Court must answer is whether the State was justified in requiring Daniel to submit to the tests, and whether the means and procedures employed respected relevant Fourth Amendment standards of reasonableness.
It must first be said that, search warrants are required, absent an emergency, where intrusions into the human body are concerned and testing procedures plainly constitute searches of persons and depend antecedently upon seizures of persons within the meaning of the Fourth Amendment. Schmerber v. California, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908, 919 (1966).
We must first inquire into whether or not the State was justified in requiring "Spider" Daniel to submit to the tests. This discussion should include an inquiry into whether or not the search satisfied the warrant requirement. Appellant argues that there was no warrant authorizing the search by the health department into his body.
We must determine whether or not the order of the trial court granting that the tests be performed satisfied the warrant requirement.
In Lee v. State, 435 So.2d 674, 675 (Miss. 1983) Mississippi accepted the "totality of circumstances" approach for determining whether probable cause exists for the issuance of a search warrant. The "totality of the circumstances" test was set forth by Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Under Gates the magistrate or judge issuing the warrant is to take a practical, common-sense approach of whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the person supplying the information there is a fair probability that contraband or evidence of crime will be found in a particular place. It is the duty of this Court to determine 1) whether or not probable cause existed in the case sub judice; 2) whether the motion for search incident (sic) satisfies the requirement of an affidavit and therefore can be accepted in lieu of an affidavit; 3) whether or not the trial court's order authorizing the search or tests is equivalent to a search warrant.
*1323 We find that probable cause existed in support of the issuance of a search warrant based upon the following facts:
(1) Jackie Broadnax was diagnosed as having gonorrhea.
(2) Jackie revealed that she had been sexually molested by "Spider" Daniel.
(3) Two other children for whom Daniel baby sat were infected with gonorrhea and informed authorities that they had been molested by Daniel. (This fact is revealed by the testimony of Jo Ann Byrd and is related to separate charges not involved in this appeal. One of other children is the sister of Jackie Broadnax. Her name is Latasha Broadnax and the other child is that of Coretta Ezell's sister.)
The foregoing facts supplied sufficient probable cause and based upon the foregoing the order was issued.
We find no evidence in the record that "Spider" Daniel did not consent to the search or tests. A consensual search is an exception to the warrant requirement. Jackson v. State, 418 So.2d 827 (Miss. 1982); Loper v. State, 330 So.2d 265 (Miss. 1976).
We find that the State was justified in requiring "Spider" Daniel to submit to the tests. We now determine whether or not the means employed met Fourth Amendment standards of reasonableness.
The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself. New Jersey v. T.L.O., 469 U.S. 325, 337-342, 105 S.Ct. 733, 740-743, 83 L.Ed.2d 720 (1985). The permissibility of a particular law enforcement practice is judged by "balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." United States v. Montoya De Hernandez, 473 U.S. 531, 537, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381, 388 (1985); United States v. Villamonte-Marquez, 462 U.S. 579, 588, 103 S.Ct. 2573, 2579, 77 L.Ed.2d 22 (1983); Delaware v. Prouse, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).
United States v. Montoya De Hernandez, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) involved a cavity search performed on a lady present at a United States border suspected of being an alimentary canal drug smuggler. The United States Supreme Court affirmed the search without a warrant. Montoya De Hernandez must be distinguished from the case sub judice because it involved a situation at an international border. Congress has granted to the Executive Branch, plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant, in order to regulate the collection of duties and to prevent the introduction of contraband into this country. Montoya De Hernandez, 473 U.S. at 537, 105 S.Ct. at 3308, 87 L.Ed.2d at 389; United States v. Ramsey, 431 U.S. 606, 616-617, 97 S.Ct. 1972, 1978-1979, 52 L.Ed.2d 617 (1977) citing Act of July 31, 1789, Ch. 5, 1 Stat. 29. In light of the foregoing we cannot rely on Montoya De Hernandez as authority for a search without a warrant because warrants are not required at borders. However, we can rely upon that case for the authority that body cavity searches are permissible in the presence of probable cause. Based upon Schmerber v. California and United States v. Montoya De Hernandez it is evident that federal law supports body cavity and blood tests as performed in the case sub judice. Birchfield v. State, Gibson v. State, 503 So.2d 230 (Miss. 1987), and Whitley v. State, 511 So.2d 929 (Miss. 1987) are also authority for blood tests and may be analogized in favor of body cavity searches.
In Birchfield v. State, 412 So.2d 1181, 1183 (Miss. 1982) we cited Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) as authority that the taking of a blood test did not violate defendant's Fourth Amendment right to be secure in his person.
Schmerber involved a situation in which a man was suspected of driving while intoxicated after having had an accident. The defendant was arrested while receiving *1324 treatment for injuries at a hospital. A police officer directed the doctor to take a blood sample in the absence of a warrant and against the defendant's wishes and without his consent. The blood sample indicated that the defendant was intoxicated. The results of the blood sample were admitted into evidence at the defendant's trial. The Supreme Court of the United States held that the drawing of the blood was permissible and not violative of the Fourth Amendment principle under the circumstances of that case.
In Birchfield the appellant was convicted of rape in a jury trial. On appeal, Birchfield argued that the trial court erred in admitting into evidence the results of a blood-semen test. In Birchfield this Court stated that the holding in Schmerber, "indicates rather positively, we think, that bodily intrusions are not prohibited by the Constitution but rather depend upon their reasonableness under the particular circumstances of each case. Birchfield, 412 So.2d at 1183. In Birchfield we quoted:
Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that the inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367 [368-69] 92 L.Ed. 436, 440; see also Aguilar v. Texas, 378 U.S. 108, 110, 111, 84 S.Ct. 1509 [1511, 1512] 12 L.Ed.2d 723, 725, 726. The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great. 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919.
Birchfield, 412 So.2d at 1183.
Similarly, in Ashley v. State, 423 So.2d 1311 (Miss. 1983) this Court was confronted with the same issue as in Birchfield but in the context of a drunk driver involved in an accident which killed two people. In Ashley this Court stated:
We find appellant had not been lawfully arrested when his blood was withdrawn for testing. However, our examination of the facts must not stop here. We must determine whether Officer Santacruz had probable cause to detain appellant and order a blood test after he went to the hospital. The facts in possession of the officer at that time were that Ashley was driving an automobile which had run into the rear end of another automobile which was stopped at a traffic signal, that an occupant of the stopped automobile had been killed in the accident, and in the opinion of the officer appellant was intoxicated. Under these facts the officer could then have arrested appellant on a charge of manslaughter and required appellant to submit to a test to determine the alcoholic content of his blood. At that time there existed probable cause for arrest and also probable cause to search appellant by requiring him to submit to the withdrawal of blood from his body to be tested.

Ashley, 423 So.2d at 1313. See also Williams v. State, 434 So.2d 1340 (Miss. 1983); Bayse v. State, 420 So.2d 1050, 1052-53 (Miss. 1982); and Gregg v. State, 374 So.2d 1301 (Miss. 1979).
The holding in Ashley v. State has been followed in Gibson v. State, 503 So.2d 230 (Miss. 1987) and Whitley v. State, 511 So.2d 929 (Miss. 1987).
However, in Cole v. State, 493 So.2d 1333 (Miss. 1986) we reversed a conviction of manslaughter and aggravated assault arising from an automobile accident holding that there was insufficient probable cause to warrant police officers' request for blood alcohol tests and therefore test results were inadmissible.
The facts in Cole v. State are substantially different from those in the case at bar. In Cole, the investigating officer stated that he did not smell the odor of alcohol on the defendant's breath at the accident scene or at the hospital. He further testified that he did not observe any whiskey bottles or beer cans in the automobile and *1325 that Cole's appearance did not indicate that he was under the influence of alcohol. The officer did testify that he requested the doctor perform the blood alcohol test because it was the policy of the sheriff's department to do so anytime someone was killed in an automobile accident. Cole, 493 So.2d at 1335.
Cole differs from Ashley v. State where an officer ordered blood tests based in part "on information he received from other officers who preceded him to the scene, about ... Ashley's behavior and his appearance of drunkenness."
We find that probable cause existed for the issuance of the search warrant ordering the tests performed on "Spider" Daniel. We further find that the motion requesting the order by the court to grant the search, although entitled "Motion for Search Incident," satisfied the requirements of an affidavit since it included the reasons that the warrant was necessary and supplied the judge with probable cause for granting the warrant. The order of the court was definite in that it specifically stated that the tests were to be performed on the body of "Spider" by medical personnel. Therefore, we find that the order of the court constituted a search warrant. Even though the affidavit was titled a motion and the search warrant was entitled an order the requisites for a valid search warrant existed.
Additionally, there was no evidence anywhere in the record that "Spider" Daniel objected to the samples being taken. Therefore, we are obligated to hold that the search was consensual and no warrant was necessary. Jackson v. State, 418 So.2d 827 (Miss. 1982); Loper v. State, 330 So.2d 265 (Miss. 1976). This assignment of error is without merit.

II. DID THE TRIAL COURT ERR IN OVERRULING THE APPELLANT'S MOTION IN LIMINE TO PROHIBIT THE STATE FROM INTRODUCING TESTIMONY OR EVIDENCE SHOWING THAT APPELLANT EITHER HAD GONORRHEA OR SEXUALLY TRANSMITTED GONORRHEA TO THE VICTIM?
The appellant argues that the evidence that he had gonorrhea and had infected Jackie Broadnax with gonorrhea was so prejudicial and inflammatory to the appellant that any relevance the fact had to his case was outweighed by the prejudicial quality of the evidence.
All evidence in some way or another is prejudicial, but only evidence which is unfairly prejudicial when weighed against its probative value falls within the purview of Rule 403 of the Mississippi Rules of Evidence.
The fact that the appellant was infected with gonorrhea and transmitted the disease to Jackie Broadnax is relevant as well as corroborative of the testimony of the six year old victim.
In Commonwealth v. Lloyd, 367 Pa.Super. 139, 532 A.2d 828, 831 (1987) that court stated:
We find the introduction of the appellant's venereal disease history both relevant and probative to the occurrence of the crimes of sexual abuse for which he was charged.
In Smith v. State, 182 Ga. App. 740, 356 S.E.2d 723, 724 (1987) that court stated in an opinion affirming a conviction for sexual molestation of a seven-year-old:
There was testimony that ... mother took her to a nearby medical facility for diagnosis and treatment of the discharge. Evidence was offered that the discharge tested positive for gonorrhea; further evidence was adduced that appellant was asked to undergo a laboratory test for gonorrhea and that he, too, tested positive for the infection.
See also State v. Bellard, 533 So.2d 961 (La. 1988) (Same); State v. Walker, 489 So.2d 353 (La. App. 4th Cir.1986); State v. Washington, 430 So.2d 641 (La. 1983).
We find that this assignment of error is without merit.

III. DID THE COURT ERR IN ALLOWING THE APPELLANT TO BE CONVICTED OF A CRIME ALLEGED TO HAVE BEEN COMMITTED ON JANUARY 17, 1986?
*1326 The appellant was indicted for the crime of sexual battery by a grand jury. The indictment alleged that the appellant committed sexual battery on Jacqueline Broadnax (Jackie) on or about January 17, 1986. (Emphasis added).
The State was allowed to introduce testimony that an incident of sexual battery took place on January 21, 1986. The date of January 17, 1986 was important in this trial as this was the date on which Coretta Ezell moved into her new apartment and "Spider" Daniel kept Jackie for Coretta while she moved. January 21, 1986 was a relevant date because Jackie Broadnax remembered that "Spider" Daniel kept her on that date because that was the date Cynthia Tucker was hospitalized giving birth to a child. These two incidents, moving and Cynthia's hospitalization, were dates that Jackie could recall.
Most of the evidence presented at trial did revolve around January 21, 1986 and an incident of sexual battery which occurred on that date.
At the conclusion of the State's case-in-chief and after the State rested, the defense made a motion for a directed verdict on grounds that the State's proof did not conform to the indictment since the only evidence put on by the State regarding the crime of sexual battery did not prove that it occurred on January 17, 1986. The motion was overruled.
The issue before this Court in regards to this assignment of error is whether the language "on or about January 17, 1986" is sufficient.
Rule 2.05, Uniform Criminal Rules of Circuit Court Practice is controlling. Rule 2.05 sets forth seven requirements which an indictment must include. Rule 2.05(5) states: The date and if applicable the time, on which the offense was alleged to be committed. Failure to state the correct date shall not render the indictment insufficient. (Emphasis added)
If an indictment reasonably provides the accused actual notice of the nature of the charge against him and includes the seven specific enumerated items it is sufficient. Armstead v. State, 503 So.2d 281, 283 (Miss. 1987).
The indictment satisfies Rule 2.05(5) by virtue of its language "on or about January 17, 1986." This date is specific enough to put defendant on notice of the charge against him and the approximate date the crime took place. Regardless, the failure to state the correct date does not render the indictment invalid pursuant to Rule 2.05(5).
This assignment of error is without merit.
Finding no error we affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, P.J., concurs in result only.