# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00280-COA

**SAMUEL LAMAR TAYLOR A/K/A SAMUEL**　　　　　　　**APPELLANT**
**TAYLOR**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　　　　　**APPELLEE**

DATE OF JUDGMENT:　　　　　　　　11/13/2023
TRIAL JUDGE:　　　　　　　　　　　HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED:　　RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:　　　　OFFICE OF STATE PUBLIC DEFENDER
　　　　　　　　　　　　　　　　　BY: AMBER LAUREN STEWART
ATTORNEY FOR APPELLEE:　　　　　OFFICE OF THE ATTORNEY GENERAL
　　　　　　　　　　　　　　　　　BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:　　　　　　　JOHN K. BRAMLETT JR.
NATURE OF THE CASE:　　　　　　　CRIMINAL - FELONY
DISPOSITION:　　　　　　　　　　　AFFIRMED - 03/31/2026
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.    A Rankin County grand jury indicted Samuel Taylor for one count of sexual battery and one count of gratification of lust against a minor, Brian.[1]  After a jury trial in the Rankin County Circuit Court, Taylor was convicted of both counts.  The trial court sentenced Taylor to life in prison for Count I and to serve fifteen years for Count II, set to run consecutively to each other in the custody of the Mississippi Department of Corrections.

¶2.    Taylor now appeals his convictions, raising three issues.  First, Taylor argues that his

---

[1]  Because this case involves crimes against a minor, a pseudonym (Brian) will be used to protect his identity.

indictment is defective because its date range is overly broad and does not adequately specify the allegations against him. Second, Taylor claims that the trial court improperly allowed hearsay testimony and statements of the victim without a proper tender-years hearing. Third, Taylor asserts that the State was improperly allowed to bolster the testimony of Brian. Finding no reversible error, we affirm Taylor's convictions and sentences.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. In 2019, Brian and his mother, Hazel, moved from Mississippi to Texas after Hazel left her husband. In May 2020, Hazel moved back to Mississippi and attempted to establish residency for Brian's schooling. That summer, Brian stayed in Texas with relatives.[2] When Brian returned to Mississippi, Hazel decided to assign temporary custody of Brian to her long-time pastor, Taylor, whom she had known since her childhood, while she looked for a place to live and tried to "get up on [her] feet." Hazel felt that she "could trust [Taylor] wholeheartedly." At the time, Taylor was still working as a music teacher in the Rankin County School District, which he had done for many years.

¶4. Taylor lived in a four-bedroom house in Richland, Mississippi. In the summer of 2022, Taylor was fifty-one years old. Two of Taylor's three adult children lived at home, leaving one bedroom vacant. Even so, Brian, who was age eleven at the time, slept in the same bedroom as Taylor, which had two separate twin-size beds. Hazel was aware of the sleeping arrangements but trusted Taylor. Brian lived with Taylor for approximately two

---

[2] During this period, Brian went on a three-week trip with his uncle Chad and allegedly was sexually abused. Brian said Chad touched him and performed oral sex on him. When Hazel found out, she took Brian to the hospital; he was taken for a forensic interview, but charges were never brought against Chad.

years until he disclosed his abuse to Hope Adams.

¶5.    On August 23, 2022, Brian went to a mental health counseling session at school because he had been diagnosed with high-functioning autism spectrum disorder and attention deficit hyperactivity disorder (ADHD) and was having some behavioral issues during class.  He met for the first time with community support specialist Adams, from Region 8 Mental Health Counseling Services.[3]  Adams testified that during this meeting, Brian disclosed to her "sometimes Mr. Taylor would put his mouth on [Brian's] thing and that [Brian] would put his mouth on Mr. Taylor's thing."  Adams testified that Brian motioned to his private area when he referred to "thing."  At this time, Brian was eleven years old.

¶6.    Adams was aware that Brian allegedly had been sexually abused by his uncle Chad approximately two years earlier.  Since his current disclosures were similar to the prior revealed abuse, Adams asked Brian if he was talking about Chad or Taylor.  Brian specified Taylor, telling her the two men's penises tasted different.  After their session, Adams notified Child Protection Services about Brian's disclosures.

¶7.    Adams's Region 8 report on Brian's case and a summary of her meeting with Brian was entered into evidence at trial.  Attached to the report was a handwritten note on notebook paper by Adams stating, "[Brian] reports how he will ask Sam Taylor to 'suck his thing' and 'it feels good but then he has to go to the bathroom.'  [Brian] states that he will sometimes 'suck [Taylor's] thing.'" Adams testified that she wrote the note during the

---

[3]  Adams testified that Region 8 is an outpatient mental health facility.

session because she was not near a laptop, and she did not want to forget the details of their session.

¶8.     As a result of Brian's disclosures to Adams, the next day, Hazel took him for a forensic interview with Charlene Barnette at the Mississippi Children's Advocacy Center (CAC).  During the interview, Brian described multiple incidents of Taylor's touching Brian's penis, demonstrating with an up-and-down motion how Taylor touched his penis.  Additionally, Brian told Barnette that "Taylor used his finger and scratched [Brian's] butt crack."  Brian also described an incident when he was lying on Taylor's stomach without any clothes on, and "they were fighting with their penises."  In another incident, Brian disclosed that "Taylor had his penis on [Brian's] butt crack on top of [Brian's] underwear, and [Brian] stated that . . . Taylor's penis made his underwear go into his butt."  Brian told Barnette he slept in his own bed in Taylor's bedroom until his bed broke, then he slept with Taylor.  Brian also discussed with Barnette his prior alleged abuse by Chad but was able to separate with distinct details the abuse by Chad and Taylor.  A recording of the CAC interview was played for the jury without objection.

¶9.     On August 24, 2022, the same day as the CAC interview, a search warrant for Taylor's home and an arrest warrant for Taylor were obtained.  Detective Josh Westbrook with the Richland Police Department investigated the case.  He searched Taylor's home, taking photographs of Taylor's bedroom, which were entered into evidence at trial.  In the bedroom were two twin-size beds, separated by several feet.  Westbrook testified that they were mechanical and designed to be together.  One of the beds had fitted sheets and looked regularly slept in.  The other bed's head was in the upright position and had toys and a

4

blanket with stars and spaceships on it. There was no fitted sheet on that bed, and Westbrook testified that it did not look regularly slept in.

¶10. After the search, Detective Westbrook arrested Taylor. On the way to the jail, in the patrol vehicle, Taylor began voluntarily talking to Westbrook, referencing several incidents Brian had disclosed in his interviews. However, Taylor was not aware of what Brian had disclosed, only that there were sexual charges against him related to Brian. Westbrook began recording Taylor's comments after Taylor told him this "was a big misunderstanding" and that one day he woke up with Brian's "thing in my mouth." Taylor began to describe other incidents about a "butt crack" and always sleeping with his bedroom door open, and Taylor said that Brian had grabbed him once. The recording was entered into evidence at trial without objection.

¶11. At trial, Brian testified about his sexual abuse by Taylor. Brian testified that he would sometimes sleep with Taylor. Brian explained to the jury that they would go under the blankets and called it "going undercover." Brian stated that occasionally he and Taylor took showers together. Brian testified that Taylor would touch Brian's "private" with his hand, and sometimes Brian would touch Taylor's "private." Taylor would also suck on Brian's penis with his mouth. Brian also saw Taylor touch his own penis, moving up and down with his hand, and "[s]omething clear was coming out of it."

¶12. More facts will be discussed as needed in our analysis. The jury ultimately found Taylor guilty of both counts, and the court sentenced Taylor as provided above. He now appeals, raising three issues.

## ANALYSIS

5

## I.       Indictment

¶13.    Taylor argues that his indictment was legally insufficient because Counts I and II (sexual battery and gratification of lust, respectively) contained an overly broad date range, and Count II failed to allege specific criminal conduct.  For these reasons, Taylor claims that his convictions should be reversed and that he should be granted a new trial.

¶14.    The legal sufficiency of an indictment is a matter of law and thus reviewed de novo. *Beal v. State*, 86 So. 3d 887, 891 (¶9) (Miss. 2012).  An indictment "shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." MRCrP 14.1(a)(1).  "The purpose of an indictment is 'to inform the defendant with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense.'" *Jones v. State*, 993 So. 2d 386, 394 (¶19) (Miss. Ct. App. 2008) (quoting *Moses v. State*, 795 So. 2d 569, 571 (¶13) (Miss. Ct. App. 2001)).[4]  A "pivotal consideration" for the validity of an indictment on appeal "is whether the defendant was prejudiced in the preparation of his defense." *Caston v. State*, 949 So. 2d 852, 858 (¶14) (Miss. Ct. App. 2007) (quoting *Wilson v. State*, 815 So. 2d 439, 443 (¶11) (Miss. Ct. App. 2002)).  "So long as from a fair reading of the indictment, taken as a whole, the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *McGilvary v. State*, 290 So. 3d 1273, 1279 (¶20) (Miss. Ct. App.

---

[4] An indictment that is defective for failing to fulfill its purpose cannot be "cured by proof received during the trial." *Ellzey v. State*, 412 So. 3d 358, 368 n.6 (Miss. Ct. App. 2024) (quoting *Moses v. State*, 795 So. 2d 569, 572 (¶16) (Miss. Ct. App. 2001)).

2020) (quoting *Harrison v. State*, 722 So. 2d 681, 687 (¶22) (Miss. 1998)).

¶15.    First, Taylor failed to raise the sufficiency of his indictment before the trial court. "Nonjurisdictional defects in [an] indictment may not be attacked for the first time on appeal absent a showing of cause and actual prejudice." *Maggett v. State*, 230 So. 3d 722, 728 (¶16) (Miss. Ct. App. 2016). "Mississippi law recognizes at least two types of 'jurisdictional defects' in indictments that may be raised for the first time on appeal: where the 'indictment fails to charge a necessary element of a crime or if there exists no subject matter jurisdiction.'" *Bradshaw v. State*, 371 So. 3d 822, 830 (¶20) (Miss. Ct. App. 2023) (quoting *Maggett*, 230 So. 3d at 728 (¶16)). Neither defect is present here. Taylor's challenges are nonjurisdictional, and he has failed to show cause or actual prejudice. Therefore, this issue is waived on appeal.

¶16.    Second, notwithstanding the waiver, Taylor's arguments are without merit. He was given proper notice of the charges against him and could prepare a defense. We shall address each argument in turn.

### A.    Date Range in the Indictment

¶17.    Taylor claims that Counts I and II of the indictment were fatally flawed, arguing the broad date range of just over two years prevented him from formulating a defense to the charges. The indictment stated that for each count the offense occurred "on about or between August 1, 2020 and August 31, 2022." This date range covers the approximate time period Brian began living with Taylor and the date he stopped. Taylor complains that his indictment is defective because there were no specific dates in either count.

¶18.    Mississippi statutory law provides that "[a]n indictment for any offense shall not be

7

insufficient for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly . . . ." Miss. Code Ann. § 99-7-5 (Rev. 2020). Time is not "of the essence of the offense" for either sexual battery or gratification of lust. Further, although Rule 14.1(a)(2)(E) of the Mississippi Rules of Criminal Procedure provides that an indictment shall include the date the offense was alleged to have been committed, Mississippi caselaw has long recognized that "a general timeframe for sexual abuse is sufficient in cases of sexual battery of a minor." *Bradshaw*, 371 So. 3d at 831 (¶24). In such an indictment, "a specific date in a child sexual abuse case is not required so long as the defendant is fully and fairly advised of the charge against him." *Mendez v. State*, 309 So. 3d 1109, 1117-18 (¶39) (Miss. Ct. App. 2020) (quoting *Jenkins v. State*, 131 So. 3d 544, 549 (¶14) (Miss. 2013)); *see also Eakes v. State*, 665 So. 2d 852, 860 (Miss. 1995) (quoting *Morris v. State*, 595 So. 2d 840, 842 (Miss. 1991)).[5] Mississippi courts have explained that relaxation of the rule is due to the "nature of the crime" and the trauma it inflicts on child-victims, who "may have difficulty identifying the exact date(s) of the crime." *Madden v. State*, 97 So. 3d 1217, 1233 (¶78) (Miss. Ct. App. 2011) (quoting *McBride v. State*, 61 So. 3d 174, 184 (¶35) (Miss. 2010)).

---

[5] *See Ellzey*, 412 So. 3d at 368-69 (¶17) (finding five-year date range in indictment for child sexual abuse sufficient); *Bradshaw*, 371 So. 3d at 832 (¶26) (finding a three and one-half year date range was sufficient in indictment for sexual battery of a child); *Mendez*, 309 So. 3d at 1117-18 (¶¶38, 42) (finding a nearly two-year date range in indictment was sufficient in sexual crimes against a child); *Shoemaker v. State*, 256 So. 3d 604, 612 (¶28) (Miss. Ct. App. 2018) (holding two-year date range for sexual misconduct was sufficient where child victim had constant interaction with defendant and abuse occurred frequently); *Baker v. State*, 930 So. 2d 399, 404-05 (¶¶8-10) (Miss. Ct. App. 2005) (finding time span of one and one-half to two and one-half years in indictment for sexual battery of a child not improper because the time of the incident is not an element of the crime).

¶19. Here, the date of either crime is not "the essence of the offense." Brian's age is undisputed, and Taylor's age met the requirements of the crimes. The indictment "fully and fairly" advised Taylor of the charges against him for both counts. Within the entire two-year timeframe between August 1, 2020, and August 31, 2022, Brian lived with Taylor, and Taylor took care of Brian. They interacted daily. The indictment was based in part on what Brian told CAC interviewer Barnette during his forensic interview. Although Brian was unable to articulate specific dates of the abuse, he was able to specify in graphic detail multiple incidents of abuse that occurred while he lived with Taylor. His defense was that Brian initiated sexual acts on Taylor due to Brian's prior sexual abuse by Chad. We cannot say that Taylor's defense was prejudiced by the broad date range of the offenses. Therefore, the two-year date range did not create a defective indictment.

¶20. Taylor cites as instructive *Moses v. State*, 795 So. 2d 569 (Miss. Ct. App. 2001), where this Court reversed the defendant's numerous convictions because his indictment was found to be defective—it had failed to specify dates and facts of sexual crimes against two children. *Id.* at 569-70, 572-73 (¶¶1, 18). The defendant was found guilty in one trial of nineteen separate counts in a twenty-two-count indictment for sexual crimes. *Id.* at 569-70 (¶1). Most of the counts charged that the offenses occurred sometime between June 1994 and September 1997. *Id.* at 570 (¶¶4-5). Also, the indictment used repetitive, identical language to describe many of the charges. *Id.* at (¶¶4, 6). Moses filed a motion to quash the indictment for using an overly broad date range and failing to specify times and places of the occurrences. *Id.* at (¶8). The trial court, however, never formally ruled on the motion. *Id.* at (¶9). This Court reversed all of Moses's convictions, finding, among other matters,

9

that the indictment was too vague; it failed to fulfill its purpose of notice by using identical, overly broad dates and not differentiating the numerous alleged incidents of abuse. *Id.* at 572 (¶¶17-18). Importantly, this Court noted that the State unquestionably had been aware of information that would have allowed it to narrow the range of dates for each offense, but the State had declined to amend the indictment. *Id.* at (¶16). The *Moses* court explained, however, that "as to the provision of an exact date" for offenses involving sexual abuse of children, "the Mississippi Supreme Court has relaxed this provision to some extent. . . ." *Id.* at (¶15). The Court recognized that "due to a child's inherent lack of awareness of dates and the secretive circumstances under which such offenses normally occur, it is often difficult to pinpoint the exact time of the offense." *Id.* (citing *Eakes*, 665 So. 2d at 860; *Daniel v. State*, 536 So. 2d 1319, 1326 (Miss. 1988)).

¶21. Taylor claims his indictment is similarly defective because it used overly broad dates for both counts. However, *Moses* is distinguishable. While in *Moses* the State had information that would have allowed it to narrow the broad date ranges, here, Taylor offers nothing to show that the State could have narrowed the time frame of the alleged incidents. During the investigation, Brian, at eleven years old, could not provide specific dates of the crimes against him, only that the abuse occurred while he lived with Taylor, which was from August 2020 until August 2022. Additionally, Taylor's indictment did not include numerous counts against multiple victims using identical language to describe each crime, as in *Moses*. Taylor also never objected to his indictment by filing a motion to quash like Moses did but, instead, raised the issue for the first time on appeal. Here, the indictment's purpose was fulfilled, unlike in *Moses*. The date range gave Taylor adequate notice of the

charges against him sufficient to prepare a defense.

### B. Specific Allegations

¶22. Taylor also argues that the indictment for gratification of lust in Count II was defective because it failed to provide specific factual allegations and merely tracked the statutory language of the crime. He claims the lack of specific facts prevented him from formulating a defense.

¶23. Count II's gratification-of-lust charge in the indictment states that Taylor:

> on about or between August 1, 2020 and August 31, 2022[,] . . . being a male . . . above the age of eighteen (18) years, whose date of birth is [in] 1970, who, for the purpose of satisfying his lust or indulging his depraved licentious sexual desires, did handle, touch or rub with his hands or any part of his body or any member thereof, the body of [Brian], a minor male child under the age of sixteen (16) years . . . in violation of Miss. Code Ann. § 97-5-23(1).

As Taylor states, this language tracks the statutory language defining the crime of gratification of lust. In Mississippi, "[g]enerally, an indictment tracking the language of the criminal statute is sufficient to inform the defendant of the charged crime." *Nelson v. State*, 422 So. 3d 1035, 1040 (¶13) (Miss. Ct. App. 2025); *see also Graves v. State*, 216 So. 3d 1152, 1158 (¶12) (Miss. 2016) (finding indictment tracking language of statutes for fondling and sexual battery of a child was sufficient).[6] "[T]he Mississippi Supreme Court and this Court have held that an indictment for sexual battery may allege 'sexual penetration' generally *and need not identify the specific nature of the penetration*" because "the particular

---

[6] In *Jenkins v. State*, 283 So. 3d 217, 220-21 (¶¶8, 11) (Miss. Ct. App. 2019), this Court did not find improper an indictment for the charge of gratification of lust that tracked the statute's language and did not allege specific facts, but the defendant raised a different argument about how the indictment was defective.

method of achieving sexual penetration is not an element of the offense . . . ." *Id.* (quoting *Thompson v.* State, 344 So. 3d 299, 302 (¶8) (Miss. Ct. App. 2022); *Metcalf v. State*, 265 So. 3d 1242, 1249 (¶29) (Miss. Ct. App. 2019)). This Court has held that the same principle is true for the crime of fondling. *Id.* "An indictment for fondling need only allege that the defendant touched the victim for lustful purposes—and need not describe the specific 'method' of touching or body parts involved." *Id.* (citing *Lepard v. State*, 394 So. 3d 1061, 1070 (¶34) (Miss. Ct. App. 2024)). We apply the same rationale to the crime of gratification of lust. Even though Taylor's indictment did not allege "how" he gratified his lust, because "how" is not an essential element of the offense, the indictment's charge in Count II was proper, giving Taylor sufficient notice of the charges against him to prepare a defense.

## II.    Adams's Testimony and Report

¶24.    At trial, Adams testified that on August 23, 2022, during her first meeting with Brian, he disclosed "sometimes Mr. Taylor would put his mouth on [Brian's] thing and that [Brian] would put his mouth on Mr. Taylor's thing." Adams also read to the jury her handwritten note on the disclosure of sexual abuse Brian made to her that day, which she attached to her report. Both were published to the jury and entered into evidence without objection.

¶25.    Taylor now argues that the trial court erred by allowing these documents into evidence, as well as by allowing Adams to testify about the disclosures because the trial court did not make an on-the-record tender-years determination on the disclosure's reliability. Taylor claims the admission of Brian's disclosures to Adams prejudiced his defense and was reversible error.

¶26.    Before trial, the State filed a notice of intent to elicit "tender years" testimony at trial

12

from Brian's CAC interview with Barnette and the disclosures he made to Region 8 specialist Adams describing the sexual acts with Taylor. The State argued that for the disclosures made to Barnette and Adams, the "time, content, and circumstances of the statements will provide the requisite substantial indicia of reliability" to satisfy the hearsay exception under Mississippi Rule of Evidence 803(25). The defense did not file a response and, at the pretrial hearing on the motion, defense counsel "confess[ed] the motion on tender years" since Brian was eleven years old at the time he made the disclosures. The trial judge found Brian presumptively of tender years and "would allow that testimony by way of the tender years exception" but stated he still wanted "to look at the statement" and would "make an on-the-record finding" after he reviewed the CAC recording. The State then pointed out that Brian's disclosures to Adams were not recorded, but there were documents stating his disclosure. The CAC video interview was then entered into evidence, and the pretrial hearing ended.

¶27. Later, before opening statements, but outside the presence of the jury, the trial court stated that it reviewed the CAC video and found it admissible. The trial court explained in detail why the CAC interview satisfied the tender-years exception, considering the numerous factors to determine a sufficient indicia of reliability.[7] However, the court did not address

---

[7] The comments to Mississippi Rule of Evidence 803(25) provide several factors that the trial court should examine to determine if there is a sufficient indicia of reliability:

(1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8)

Adams's report[8] or handwritten note about Brian's disclosures. During Adams's testimony, the State offered her report and note, confirming with her that both were kept "in the normal scope and course of business at Region 8." The trial court admitted both into evidence without objection from Taylor.

¶28. First, this issue is procedurally barred. At trial, the defense did not object to Adams's testimony about what Brian told her, or her handwritten note in the report. "Failure to timely object to alleged hearsay evidence acts as a bar preventing the aggrieved party from raising the issue on appeal." *Justice v. State*, 192 So. 3d 1096, 1098 (¶8) (Miss. Ct. App. 2016) (quoting *Grayson v. State*, 850 So. 2d 196, 198 (¶5) (Miss. Ct. App. 2003)). This Court has clarified that statements from a child in sex abuse cases "are no different than any other statements that are allegedly hearsay when it comes to the contemporaneous objection rule . . . ." *Graham v. State*, 264 So. 3d 819, 821 (¶7) (Miss. Ct. App. 2018). At the pretrial hearing, the defense counsel did not request that the trial court review Adams's report and note on Brian's disclosures, nor did counsel request a ruling on them when the trial court admitted the CAC video. Further, on appeal Taylor does not argue plain error. Moreover, "[w]ith regard to hearsay evidence, we have held that there can be no plain error because 'no

<div style="margin-left: 2em">
certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.
</div>

MRE 803 adv. comm. note.

    [8] Taylor's issue focuses on Adams's handwritten note of Brian's incriminating disclosures and not her actual report of the meeting.

legal rule requires a trial judge to exclude hearsay in the absence of an objection,' and 'trial judges are not expected to strike or exclude hearsay sua sponte.'" *Id.* at (¶8) (quoting *Shaheed v. State*, 205 So. 3d 1105, 1112 (¶21) (Miss. Ct. App. 2016)).

¶29. Second, the procedural bar notwithstanding, the trial court's admission of Adams's note and testimony about Brian's disclosures without an on-the-record finding of reliability was harmless error. "Traditionally, our Mississippi Supreme Court and this Court have applied a harmless-error analysis when it has been determined that the trial court failed to conduct an 'on-the-record' analysis finding of indicia of reliability." *Marion v. State*, 281 So. 3d 174, 177 (¶13) (Miss. Ct. App. 2019). "Under the harmless-error test, 'this Court must determine whether the weight of the evidence against the defendant is sufficient to outweigh the harm done by allowing admission of the evidence.'" *Id.* (quoting *Veasley v. State*, 735 So. 2d 432, 437 (¶17) (Miss. 1999)). Here, it was.

¶30. Aside from Adams's note of Brian's disclosures, there was more than sufficient evidence to convict Taylor as charged. Both Brian's CAC interview and testimony at trial were damning to Taylor's defense. The CAC interview, played for the jury without objection, showed Brian's disclosing to Barnette that Taylor touched his penis numerous times. Brian identified a penis on an anatomical diagram. Brian demonstrated with an up-and-down motion how Taylor would touch his penis. Brian told Barnette that Taylor also rubbed and scratched Brian's "butt crack" with his finger. Brian lay naked on Taylor's stomach, and "they were fighting with their penises." Further, Taylor had his penis on Brian's "butt crack" on top of Brian's underwear, and "Taylor's penis made his underwear go into his butt." Barnette testified that in her professional opinion, Brian had no trouble

15

remembering Taylor's abuse. In fact, Brian would correct Barnette if she misstated a fact. During the interview, Brian also discussed the alleged abuse by Chad several years earlier, and Brian was able to distinguish that abuse from Taylor's crimes.

¶31. At trial, Brian testified that he and Taylor slept in the same bed. Taylor would touch Brian's penis with his hand, and sometimes Brian would touch Taylor's penis with his hand. Taylor would also touch his penis with Brian's penis. Additionally, Taylor would suck on Brian's penis with his mouth. Brian also observed Taylor's touching his own penis, with his hand "going up and down with it," and ejaculate.

¶32. Further, Detective Westbrook testified that Taylor voluntarily discussed the accusations against him, without being questioned, in his patrol vehicle on the way to jail. Taylor blamed Brian, stating that there had been a "big misunderstanding" and that Brian had put his "thing in my mouth." Taylor made many references to accusations Brian had told Adams and Barnette without having a way to know what Brian had reported. Taylor confided to Westbrook that he and Brian slept in the same bed, corroborating the CAC interview. Taylor made comments in reference to "butt cracks," which is the same term Brian used to describe some of the abuse. Taylor told Westbrook that Brian had "grabbed him" one time, and in the CAC interview Brian stated he had touched Taylor's penis with his hand.

¶33. Finally, Taylor argues that Adams's testimony and note on Brian's disclosures were more prejudicial than probative. Mississippi Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." However, Taylor failed to make this objection before the trial

16

court. "A failure to make a contemporaneous objection waives an issue for appeal purposes." *Sullivan v. State*, 281 So. 3d 1146, 1160 (¶30) (Miss. Ct. App. 2019). Therefore, this argument is waived. Further, it lacks merit. Adams's testimony and note on Brian's disclosures were probative in describing how the investigation of Taylor's sexual abuse began. Taylor has failed to show this probative value was substantially outweighed by a danger of unfair prejudice.

### III.     Bolstering of the Child-Witness's Testimony

¶34.    Taylor next complains that the trial court improperly allowed the State to bolster Brian's testimony through the testimony of Adams and Barnette, which mainly focused on Brian's disclosures of sexual abuse. Through Adams, the State introduced her Region 8 mental health services report, and through Barnette, the State introduced the CAC forensic interview with Brian; however, both witnesses also reiterated Brian's testimony. Taylor claims this resulted in improper bolstering, prejudicing his defense to such a degree that he should receive a new trial. We disagree.

¶35.    At no point did Taylor object to Adams's or Barnette's testimony at trial or the admission of the Region 8 report or CAC interview. In a recent case appealing convictions of fondling a child, this Court found the defendant's failure to object to the testimony of a forensic interviewer, who would vouch for or bolster the victim's credibility, waived the issue on appeal. *See Ellzey*, 412 So. 3d at 375 (¶36). The same is true here. Accordingly, this issue is waived.

### CONCLUSION

¶36.    For the foregoing reasons, we affirm Taylor's convictions and sentences.

¶37. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**